UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CAROL L. BLAIS,                      :
          Plaintiff,                 :
                                     :
        v.                           :        CA 08-119 ML
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner,                        :
Social Security Administration,      :
          Defendant.                 :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

        This matter is before the Court on the request of Plaintiff
Carol L. Blais ("Plaintiff") for judicial review of the decision
of the Commissioner of Social Security ("the Commissioner"),
denying Disability Insurance Benefits ("DIB") and Supplemental
Security Income ("SSI"), under §§ 205(g) and 1631(c)(3) of the
Social Security Act, as amended, 42 U.S.C. §§ 405(g) and
1383(c)(3) ("the Act").  Plaintiff has filed a motion to reverse
the decision of the Commissioner.  See Plaintiff's Motion to
Reverse the Decision of the Commissioner (Document ("Doc.") #10)
("Motion to Reverse").  Defendant Michael J. Astrue ("Defendant")
has filed a motion for an order affirming the decision of the
Commissioner.  See Defendant's Motion for an Order Affirming the
Decision of the Commissioner (Doc. #11) ("Motion to Affirm").

        This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §
636(b)(1)(B).  For the reasons set forth herein, I find that the
Commissioner's determination that Plaintiff is not disabled is
supported by substantial evidence in the record.  Accordingly,
based on the following analysis, I recommend that Defendant's
Motion to Affirm be granted and that Plaintiff's Motion to

Reverse be denied.

## Facts and Travel

Plaintiff was born in 1961. (Record ("R.") at 22, 561)  She
completed a CNA certification course, (R. at 20, 564), received
her GED, (R. at 22, 562), and is able to communicate in English,
(R. at 22).  She has past relevant work experience as a clerk, a
material handler, an inspector, and a shipping coordinator.  (R.
at 21, 563)

Plaintiff filed applications for DIB and SSI on November 8,
2004,[1] (R. at 14), alleging disability since April 1, 2003,
(id.), due to post-traumatic stress disorder ("PTSD"), bipolar
disorder, suicidal ideation, a dislocated jaw, and arthritis in
her back, (R. at 105).  The applications were denied initially,
(R. at 14, 30), and on reconsideration, (R. at 14, 29), and a
request for a hearing before an ALJ was timely filed, (R. at 14,
43).  A hearing was held on August 16, 2006, at which Plaintiff,
represented by counsel, appeared and testified, as did an
impartial medical expert, Stuart Gitlow, M.D. (the "ME"), an
impartial vocational expert, Carl Barchi[2] (the "VE"), and
Plaintiff's therapist, Leah Berg.  (R. at 14, 523-89)  On
November 29, 2006, the ALJ issued a decision finding that
Plaintiff was not disabled within the meaning of the Act.  (R. at
14-23)  Plaintiff requested review by the Appeals Council, (R. at
10, 522), which on January 31, 2008, denied her request, (R. at
6-8), thereby rendering the ALJ's decision the final decision of
the Commissioner, (R. at 6).  Plaintiff thereafter filed this

---

[1] The applications do not appear in the record.  See Plaintiff's
Memorandum in Support of Her Motion to Reverse the Decision of the
Commissioner ("Plaintiff's Mem.") at 2 n.1.

[2] Although Mr. Barchi is identified as "Carl Bachi," (R. at 523-
24, 579, 581), in the hearing transcript, the correct spelling of his
last name is "Barchi," (R. at 14, 44, 45).

action for judicial review.

## Issue

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[3] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426

---

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

(1971))).

## Law

To qualify for DIB, a claimant must meet certain insured status requirements,[4] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to receive SSI if she is aged, blind, or disabled and meets certain income requirements.  See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity that she is unable to perform her previous work or any other kind of substantial gainful employment which exists in the national economy.  See 42 U.S.C. § 423(d)(2)(A).  "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[5]  20 C.F.R. §§ 404.1521(a), 416.921(a)

---

[4] The ALJ found that "[t]he claimant m[et] the insured status requirements of the Social Security Act through December 31, 2008." (R. at 16)

[5] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b) (2008).  Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

4

(2008).[6]  A claimant's complaints alone cannot provide a basis
for entitlement when they are not supported by medical evidence.
See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21
(1st Cir. 1986); 20 C.F.R. § 404.1529(a).

    The Social Security regulations prescribe a five step
inquiry for use in determining whether a claimant is disabled.
See 20 C.F.R. § 404.1520(a) (2008); see also Bowen v. Yuckert,
482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v.
Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that
scheme, the Commissioner must determine sequentially: (1) whether
the claimant is presently engaged in substantial gainful work
activity; (2) whether she has a severe impairment; (3) whether
her impairment meets or equals one of the Commissioner's listed
impairments; (4) whether she is able to perform her past relevant
work; and (5) whether she remains capable of performing any work
within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The
evaluation may be terminated at any step.  See Seavey v.
Barnhart, 276 F.3d at 4.  "The applicant has the burden of
production and proof at the first four steps of the process.  If
the applicant has met her burden at the first four steps, the
Commissioner then has the burden at Step 5 of coming forward with
evidence of specific jobs in the national economy that the
applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606,
608 (1st Cir. 2001).

### ALJ's Decision

    Following the familiar sequential analysis, the ALJ in the

---

Id.

    [6] The Social Security Administration ("SSA") has promulgated
identical sets of regulations governing eligibility for Disability
Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").
See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120
n.1 (1st Cir. 1986).  For simplicity, the Court hereafter will cite
only to one set of regulations.  See id.

instant case made the following findings: at step one, that
Plaintiff had not engaged in substantial gainful activity since
April 1, 2003, her alleged onset date; at step two, that the
combination of Plaintiff's trauma history with avoidance
behaviors, substance abuse, chronic obstructive pulmonary
disease, and degenerative joint disease constituted severe
impairments; at step three, that Plaintiff did not have an
impairment or combination of impairments that met or medically
equaled one of the listed impairments in 20 C.F.R. Part 404,
Subpart P, Appendix 1; that, although Plaintiff's medically
determinable impairments could reasonably be expected to produce
some symptoms of the type alleged, her statements concerning the
intensity, persistence, and limiting effects of those symptoms
were not entirely credible; that Plaintiff retained the residual
functional capacity ("RFC") to lift or carry up to ten pounds
frequently and twenty pounds occasionally, sit for approximately
six hours out of an eight hour workday, and stand and/or walk for
up to six hours, but that she was only able to work in conditions
where levels of dust, gases, or other airborne pulmonary
irritants were comparable to those in public office buildings
(i.e., that she was able to work in "clean" manufacturing
settings where the environment was controlled and irritants held
to similar levels), and that due to the impact of her psychiatric
impairments she would experience moderate limitations in
maintaining attention and concentration and in dealing
appropriately with the public, co-workers, and supervisors; at
step four, that Plaintiff was unable to perform her past relevant
work; and at step five, that, considering her age, education,
work experience, and RFC, and based on the testimony of the VE,
jobs existed in significant numbers in the national economy which
Plaintiff could perform.  (R. at 16-22)

**Error Claimed**

Plaintiff alleges that because the ALJ gave insufficient weight to the opinions of Plaintiff's treating sources, his RFC findings are not supported by substantial evidence.[7]

**Discussion**

According to Plaintiff:

> [T]wo treating psychiatrists, Dr. Stein and Dr. McInteer[,] and three counselors, Leah Berg, Faye Sotirakis and David Erwin, stated their opinions that [Plaintiff] suffered from severe symptoms that precluded all full time work. Dr. Stein in particular gave specific functional limitations in a form, explained in her letter[,] which supported her opinions. [R. at 299-300, 361] Leah Berg, the counselor who testified at the hearing[,] concurred with those ratings. The ALJ, however, gave reduced weight to the treating source opinions and greater weight to the opinions of the non-examining medical expert and state agency psychologist. He erred.

Plaintiff's Memorandum in Support of Her Motion to Reverse the Decision of the Commissioner ("Plaintiff's Mem.") at 12.

The ALJ stated that:

> The undersigned places significant weight in the opinion of Dr. Gitlow, Board-certified in psychiatry, a specialist in addiction and forensic psychiatry, and recognized by the Commissioner as an impartial medical expert. After reviewing all evidence of record and considering the testimony of the claimant and therapist Leah Berg, Dr. Gitlow indicated that the record is consistent with a history of alcohol abuse and trauma with residual avoidance behavior, but he found no compelling evidence of mood disorder. Whether the claimant has abstained as alleged or not,[8] Dr. Gitlow

---

[7] Plaintiff does not contest the ALJ's findings with regard to her physical limitations. See Plaintiff's Mem. at 6.

[8] Here, the ALJ inserted a footnote which reads in its entirety:

Dr. Gitlow testified that the evidence does not unambiguously establish that the claimant has abstained from alcohol use to

pointed out that the (relatively rare) periods when the
record does suggest sobriety coincide with the records
which indicate that the claimant was doing particularly
well:  In September 2005 mental status exam was
essentially normal, and GAF[9] rating was consistent with
not more than "moderate" functional impairment; in July,
2006 the claimant was described as not being anxious,
depressed or agitated.

The undersigned has also considered the opinions of Dr.
Stein, Dr. Guggenheim, past mental health counselors and
case managers; all of whom assert that the claimant is
unable to engage in full time competitive employment.
These opinions all appear to have been prepared for
purposes of this litigation and not in course of
continuing treatment.  The medical expert specifically
opined that Dr. Stein's August 2006 residual functional
capacity assessment and questionnaire responses were
clearly not supported by the record as a whole.  This
opinion is underscored by Dr. Stein's rather equivocal
letter of September 28, 2006 (also prepared for the

---

the extent alleged.  Her history is that of a life-long habit
of binge drinking (consuming from a quart to two quarts of
brandy at a time), which he noted is rarely successfully
addressed by simple cessation (as alleged by the claimant)
without participation in specific substance abuse treatment
programs.   There is no indication that the claimant has
participated in such programs.  He noted further that the
record of the claimant appearing for therapy sessions without
showing signs of alcohol abuse (as testified to by claimant's
therapist at hearing) are [sic] not convincing where, as here,
the history is of weekend binge drinking, and the therapy
sessions occur during the week.

(R. at 20 n.2)

[9] The Global Assessment of Functioning ("GAF") "is a subjective
determination based on a scale of 100 to 1 of 'the clinician's
judgment of the individual's overall level of functioning.'"  Langley
v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004)(quoting
Diagnostic and Statistical Manual of Mental Disorders (4th ed. Text
Revision) ("DSM-IV-TR") at 32).  The GAF "[c]onsider[s] psychological,
social, and occupational functioning on a hypothetical continuum of
mental health-illness."  DSM-IV-TR at 34.  A GAF score between 51 and
60 is indicative of "**[m]oderate symptoms** (e.g., flat affect and
circumstantial speech, occasional panic attacks) **OR moderate
difficulty in social, occupational, or school functioning** (e.g., few
friends, conflicts with peers or co-workers).  DSM-IV-TR at 34.

claimant's counsel, not only in preparation for litigation but post-hearing), which suggests that h[er] regular session notes present a more optimistic view of the claimant's functioning than is warranted [R. at 361-62]. The argument is not persuasive: Between contemporaneously recorded treatment notes and purpose-driven letters of support, the undersigned finds more candor and credibility in the former. The undersigned finds the assessment[s] of the state agency physicians [R. at 152-57, 194-207] are largely in accord with Dr. Gitlow's findings, and thus affords them considerable weight with respect to limitations posed by the claimant's psychiatric impairments.[10]

(R. at 20-21)(internal citations omitted).

The ALJ was not required to afford controlling weight to the opinions of Drs. Guggenheim, McInteer, and Stein simply because they were Plaintiff's treating psychiatrists. See Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)("The opinions of Dr. Davila and Dr. Felix are not entitled to greater weight merely because they were treating physicians,

---

[10] At this point, the ALJ included a footnote which states, in its entirety, that:

It is acknowledged that Dr. Gitlow stands alone in his opinion that there is no basis for a diagnosis of depression or other mood disorder. His opinion is well grounded, however: He brings a more credentialed training to the task of addressing this question (with Board certification in psychiatry and specialization in addiction medicine); based his assessment on a careful review of the facts, i.e., showing that symptoms and signs relied on by others as a basis for a diagnosis of mood disorder generally appear during periods of substance and are the *same symptoms* that justify a diagnosis of alcohol dependence; testified that the Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. requires such symptoms *in the absence of substance or medication effects* to justify a proper mood disorder diagnosis; and showed (as discussed above) that the record suggests improved functioning during periods when the claimant is thought *not to have been abusing alcohol*. Finally, it is noted that unique in this record, Dr. Gitlow had the opportunity to review and consider the entire medical/psychiatric record.

(R. at 21 n.3)

9

whereas Dr. Medina was a consulting physician."); <u>Arruda v.</u>
<u>Barnhart</u>, 314 F.Supp.2d 52, 72 (D. Mass. 2004)("The law in this
circuit does not require the ALJ to give greater weight to the
opinions of treating physicians.")(citing <u>Arroyo v. Sec'y of</u>
<u>Health & Human Servs.</u>, 932 F.2d 82, 89 (1st Cir. 1991); <u>Keating</u>
<u>v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 276 (1st Cir.
1988)); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at
*2 (S.S.A.)("It is an error to give an opinion controlling weight
simply because it is the opinion of a treating source if it is
not well-supported by medically acceptable clinical and
laboratory techniques or if it is inconsistent with the other
substantial evidence in the case record."); <u>see also</u> 20 C.F.R. §
404.1527(d)(listing factors adjudicator is to consider in
determining weight to be given to opinion).[11]  Moreover, the
Commissioner is entitled to give greater weight to the opinion of
his own medical expert.  <u>Coggon v. Barnhart</u>, 354 F.Supp.2d 40, 54
(D. Mass. 2005)("The Commissioner may also place greater weight
on the report of its medical expert.")(citing <u>Keating</u>, 848 F.2d
at 275 n.1 ("It is within the [Commissioner's] domain to give
greater weight to the testimony and reports of medical experts
who are commissioned by the [Commissioner].");  <u>Lizotte v. Sec'y</u>
<u>of Health & Human Servs.</u>, 654 F.2d 127, 130 (1st Cir. 1981)).

---

[11] An ALJ is directed to consider the existence of an examining
relationship, the existence of a treating relationship, the length,
nature, and extent thereof, the supportability of an opinion, the
consistency of an opinion with the record as a whole, the
specialization of the source, and any other factors which the claimant
brings to the adjudicator's attention.  <u>See</u> 20 C.F.R. § 404.1527(d).
"Opinions on some issues ... are not medical opinions ... but are,
instead, opinions on issues reserved to the Commissioner because they
are administrative findings that are dispositive of a case; i.e., that
would direct the determination or decision of disability."  20 C.F.R.
§ 404.1527(e).  These include opinions that an individual is disabled
or unable to work, opinions that an impairment meets or medically
equals a listed impairment, and opinions regarding an individual's
RFC.  <u>See</u> <u>id.</u>

Plaintiff asserts that the ALJ "failed to follow the Commissioner's guidelines for evaluating treating source opinions." Plaintiff's Mem. at 12. According to Plaintiff, "the ALJ appears only to have considered the consistency between the opinions and the records and the fact that the opinions were given in connection with [Plaintiff's] application. He failed to consider the other factors as required and the reasons he did give were erroneous." Id. at 13. The Court is not so persuaded.

The ALJ stated that Plaintiff "has been followed at the East Bay Mental Health Center since June 2003, at first by Dr. Frederick Guggenheim and more recently by Dr. Achina Stein."[12] (R. at 17) Thus, the ALJ recognized the doctors' treating relationship with Plaintiff, the length thereof, and, implicitly, their specialization. With regard to Dr. Stein, the ALJ found that her assessment of Plaintiff's RFC was unsupported by her own treatment notes as well as inconsistent with the record as a whole. (R. at 20) The ALJ also noted that he had considered the testimony of Plaintiff's therapist, Leah Berg, and the opinions of past therapists and case managers.[13] (R. at 20) The Court concludes, therefore, that the ALJ properly took into account the required factors. Further, it is clear from the ALJ's discussion of the opinions of Plaintiff's treating sources, (R. at 17, 19-21), that he did not simply "reject," Plaintiff's Mem. at 13,

---

[12] Although the ALJ neglected to list Dr. McInteer, the Court finds this omission to be minor.

[13] Section 1513 lists "[a]cceptable medical sources" as: (1) licensed physicians (medical or osteopathic doctors); (2) licensed or certified psychologists; (3) licensed optometrists; (4) licensed podiatrists, for purposes of establishing impairments of the foot or foot and ankle only; and (5) licensed speech-language pathologists, for purposes of establishing speech or language impairments only. 20 C.F.R. § 404.1513(a). "Other sources," evidence from whom the ALJ **may** also use ... to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work," 20 C.F.R. § 404.1513(d) (bold added), include therapists.

them, but, rather, gave them due consideration and determined to afford them less weight than those of the ME and reviewing psychologist and psychiatrist.  See Arruda, 314 F.Supp.2d at 72 ("The relevant regulations ... permit the ALJ to downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where, as here, it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians.").

Plaintiff also contends that "it was error to discount the treating source opinions because they were given in connection with the plaintiff's application for disability benefits." Plaintiff's Mem. at 14 (citing Gonzalez Perez v. Sec'y of Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987); Arroyo v. Barnhart, 295 F.Supp.2d 214, 220-21 (D. Mass. 2003)).  In fact, the Arroyo decision, cited by Plaintiff, provides support for the ALJ's determination in the instant case.  The Arroyo court stated that:

> Although **it might be proper to reject a doctor's opinion letter that "varied from his treatment notes and 'was worded ambiguously in an apparent attempt to assist the claimant in obtaining social security benefits,'"** ... it was not proper to reject the opinion of a doctor simply because it was solicited by a claimant's attorney.

Arroyo, 295 F.Supp.2d at 220 (quoting Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998)(quoting Saelee v. Chater, 94 F.3d 520, 523 (9th Cir. 1996)))(bold added).  Here, the ALJ observed that his finding was "underscored by Dr. Stein's rather equivocal letter of September 28, 2006 (also prepared for the claimant's counsel, not only in preparation for litigation but post-hearing), which suggests that h[er] regular session notes present a more optimistic view of the claimant's functioning than is warranted."  (R. at 20)(internal citation omitted).  Thus, the

ALJ did not afford less weight to Dr. Stein's opinion "simply because it was solicited by [the] claimant's attorney."  Arroyo, 295 F.Supp.2d at 220.  He found her letter to be "equivocal," (R. at 20), and at variance with her own treatment notes, (id.).

Moreover, the ALJ gave additional reasons, supported by the record, for his determination to afford greater weight to the ME's testimony than to Plaintiff's treating source's opinions.  See Arroyo, 295 F.Supp.2d at 221 ("[A]n administrative law judge's decision can still pass muster if the other reasons given to accord medical reports little weight are adequately supported."); Ballou v. Astrue, No. CA 07-386 M, 2009 WL 1140127, at *5 (D.R.I. Apr. 27, 2009)("That is exactly the case here as additional reasons cited by the ALJ are amply supported by the record."); see also Rivera-Torres v. Sec'y of Health & Human Servs., 837 F.2d 4, 5 (1st Cir. 1988)("The [ALJ] articulated a reasonable basis for accepting the consulting doctors' opinions ....");  Gonzalez Perez, 812 F.2d at 749 ("Something more substantive than just the timing and impetus of medical reports obtained after a claim is filed must support an ALJ's decision to discredit them.").  The ALJ credited the ME's assessment that "Dr. Stein's August 2006 residual functional capacity assessment and questionnaire responses were clearly not supported by the record as a whole."[14]  (R. at 20)  The ALJ further stated that

---

[14] The ALJ stated that:

While Dr. Stein's treatment notes reference some agitation and anxiety, the claimant is fairly consistently described as well oriented and goal directed, with good eye contact and clear, coherent speech.  She has experienced some mood cycling and PTSD symptoms, but the claimant has been well maintained since at least late 2005 on Abilify, Prozac and Lamital; although on a few occasions she apparently stopped medications on her own accord.  With the exception of the August 2006 relapse and hospitalization, the claimant is also alleged to have stopped regular use of alcohol [R. at 271-87].

Dr. Stein's letter, in which she explained her RFC findings, was unsupported by her own treatment notes. (<u>Id.</u>)  The ALJ also noted that the non-examining state agency psychologist's and psychiatrist's assessments were "largely in accord," (R. at 21), with the ME's findings and afforded them considerable weight, (<u>id.</u>); <u>see also</u> <u>DiVirgilio v. Apfel</u>, 21 F.Supp.2d 76, 81 (D. Mass. 1998)(noting that "broad agreement" between advisory opinions was a "level of agreement sufficient for [them] to be considered substantial evidence")(citing <u>Berrios Lopez v. Sec'y of Health & Human Servs.</u>, 951 F.2d 427, 431 (1st Cir. 1991)).  It is the ALJ's responsibility to resolve such conflicts in the evidence, not this Court's.  <u>See</u> <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991)("[T]he resolution of conflicts in the evidence is for the [Commissioner], not the courts."); <u>Rodriguez Pagan</u>, 819 F.2d at 3 ("Although other medical evidence in the record conflicted with [the non-treating, consulting doctor's] conclusions, the

---

The above symptoms notwithstanding, the claimant has completed a CNA certification course in 2003, finishing first in her class.  She also worked part time in a position requiring contact with the public and also more recently either volunteered or worked in a pizza restaurant.  During an October vocational evaluation the claimant was described as cooperative and well motivated, with good concentration, effort and persistence; and no indication of severe psychopathology. [R. at 54-58]  Treatment notes from a series of 2006 urological examinations specifically indicate that the claimant gave no appearance of anxiety, depression or agitation [R. at 288-96].  The fact that the claimant has been able to engage in this range of interaction with others without great difficulty, and also routinely goes out for walks, to the drug store, etc.[,] suggests that the overall impact of her psychiatric conditions is not as severe as she alleges.  Moreover, the claimant has alleged that she had experienced related symptoms for many years, yet the record reflects that she was able to maintain steady employment until 2003.

(R. at 19-20)  In addition, Plaintiff testified that she received her GED subsequent to obtaining her CNA license.  (R. at 562, 564)

14

resolution of such conflicts in the evidence is for the
[Commissioner].”); Rodriguez v. Sec'y of Health & Human Servs.,
647 F.2d 218, (1st Cir. 1981)(“[T]he resolution of conflicts in
the evidence and the determination of the ultimate question of
disability is for [the Commissioner], not for the doctors or for
the courts.”).

Finally, Plaintiff asserts that “the ALJ erred in giving
greater weight to the opinions of the medical expert and the
state agency psychologists.[15]  They based their opinions solely
on the treatment notes.”  Plaintiff's Mem. at 14.  While this
statement is accurate as to the non-examining sources, it is not
true of the ME, who, in addition to reviewing the entire record,
also heard the testimony of Plaintiff and her therapist, Leah
Berg.  See Bianchi v. Sec'y of Health & Human Servs., 764 F.2d
44, 46 (1st Cir. 1985)(“Dr. Capone [the medical expert], a board
certified psychiatrist, not only had the opportunity to review
the medical records accumulated for the hearing, but he also had
ample opportunity to observe [the plaintiff] during her testimony
at the hearing.  Accordingly, his opinion would be entitled to
considerable weight.”).  The ALJ additionally “noted that unique
in this record, [the ME] had the opportunity to review and
consider the entire medical/psychiatric record.”  (R. at 21 n.3)

### Summary

In summary, the Court finds that the ALJ was justified in
affording greater weight to the ME's opinion than to the opinions
of Plaintiff's treating sources, as the ME's opinion is supported
by substantial evidence in the record.  Accordingly, Plaintiff's
claim of error should be rejected.

---

[15] The Court notes that the second non-examining reviewer, Susan
Diaz-Killenberg, is a medical doctor (presumably a psychiatrist), (R.
at 194, 210), not a psychologist.

**Conclusion**

The Court finds that the ALJ's determination that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record. Accordingly, I recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
July 7, 2009